RAY TOWNSHIP v B & BS GUN CLUB

Docket No. 195027. Submitted September 3, 1997, at Detroit. Decided December 12, 1997, at 9:15 A.M.

Ray Township brought an action in the Macomb Circuit Court against B & BS Gun Club, seeking a injunction to prevent the defendant from operating its shooting range until it complied with the provisions of the township's shooting range ordinance as amended and seeking a declaration that 1994 PA 250 was unconstitutional because it contravened the Title-Object Clause of the Michigan Constitution and was vague in the constitutional sense. The court, Raymond R. Cashen, J., upheld the constitutionality of 1994 PA 250, ruled that the plaintiff was precluded by the Sport Shooting Ranges Act, MCL 691.1541 *et seq.*; MSA 18.1234(41) *et seq.*, as amended by 1994 PA 250, from enforcing the provisions of its amended ordinance against the defendant, and granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The title of 1994 PA 250, which in amending the Sport Shooting Ranges Act readopted the title of that act and which provides that the act was "to regulate the application of state and local laws, rules, regulations, and ordinances regarding sport shooting ranges," was sufficiently broad in its stated object to encompass the provisions of the added § 2a(1), MCL 691.1542a(1); MSA 18.1234(42a)(1), which regulates the application of local ordinances by providing that any shooting range that is not in violation of existing law at the time an ordinance is enacted will be permitted to continue its operation even if the operation of a shooting range does not conform with the new provisions of the ordinance, and of the added § 2a(2), MCL 691.1542a(2); MSA 18.1234(42a)(2), which regulates the application of local ordinances by providing that a shooting range in existence at the time of the adoption of 1994 PA 250 and is operating in general compliance with generally accepted practices may continue certain enumerated activities even if such activities are not in accordance with the new or amended local ordinance. Accordingly, § 2a of 1994 PA 250 does not violate the requirement of Const 1963, art 4, § 24, that the title of an act must express the general purpose or object of the act, because the title of 1994 PA 250 gives fair notice of the provisions of § 2a.

2. Const 1963, art 4, § 24 also prohibits an act from embracing more than one object. That prohibition is to ensure that an act contains only matters that are germane to its object, but permits any provisions that directly relate to, carry out, and implement the principal object. Because both § 2a(1) and § 2a(2) relate to the general purpose of the regulation of the application of local ordinances to sport shooting ranges, the subjects encompassed by those subsections cannot be said to be so diverse as to violate the prohibition against multiple objects.

3. Section 2a(2) is not vague in the constitutional sense by reason of its reference to actions by shooting ranges that are in accordance with "generally accepted operation practices." That phrase is defined in § 1(a) of the act, MCL 691.1541a; MSA 18.1234(41)(a), as those practices adopted by the Commission of Natural Resources that are established by a nationally recognized organization that provides voluntary firearm safety programs. Because the parties indicate that the commission has adopted the range manual of the National Rifle Association for the purpose of fixing the generally accepted operation practices of shooting ranges, there exists a standard against which the actions of a shooting range may be evaluated.

Affirmed.

1. CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — SPORT SHOOTING RANGES ACT.

The provisions of the 1994 amendment of the Sport Shooting Ranges Act relative to limitations on the application of subsequently adopted local ordinances to preexisting sport shooting ranges do not contravene the constitutional requirement that no act shall embrace more than one object, which must be stated in the title of the act (Const 1963, art 4, § 24; 1994 PA 250, § 2a, MCL 691.1542a; MSA 18.1234[42a]).

2. CONSTITUTIONAL LAW — VAGUENESS — SPORT SHOOTING RANGES ACT — GENERALLY ACCEPTED OPERATION PRACTICES.

The requirement in § 2a(2) of the Sport Shooting Ranges Act that certain activities of existing shooting ranges will be permitted notwithstanding the fact that the activities do not comply with the provisions of a local ordinance if the activities are "generally accepted operation practices" does not introduce an element of constitutionally prohibited vagueness; "generally accepted operation practices" is specifically defined in § 1(a) of the act as the practices established by a nationally recognized organization that provides voluntary firearm safety programs that have been adopted by the Com-

mission of Natural Resources (MCL 691.1541[a], 691.1542a; MSA 18.1234[41][a], 18.1234[42a]).

*Anthony, Seibert and Dloski* (by *Robert J. Seibert* and *Candace E. Cavanaugh*), for the plaintiff.

*Jennifer L. Harrison*, for the defendant.

Before: MARKMAN, P.J., and MCDONALD and FITZGER-ALD, JJ.

MCDONALD, J. Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant. We affirm.

The facts in this case are essentially undisputed. Defendant has operated an outdoor shooting range located in Ray Township since 1958. When defendant first began its operations, plaintiff township had no ordinances regulating shooting ranges. Plaintiff enacted the Ray Township Shooting Range Ordinance regulating the construction and operation of shooting ranges in 1973. Defendant complied with this ordinance. In 1993, plaintiff adopted Ordinance 27-93-1, amending several provisions of the 1973 ordinance. Among other things, Ordinance 27-93-1 required shooting ranges to obtain an annual permit in order to operate, increased the amount of liability insurance they were required to carry, and restricted the hours and days that shooting ranges could operate. Defendant protested this ordinance, but initially complied with its provisions.

In December 1994, after the Legislature passed 1994 PA 250 amending the Sport Shooting Ranges Act (SSRA), MCL 691.1541 *et seq.*; MSA 18.1234(41) *et seq.*, defendant wrote plaintiff a letter indicating that because of these recent amendments of the SSRA, it

was no longer required to comply with Ordinance 27-93-1. Subsequently, plaintiff filed suit seeking an injunction to prevent defendant from operating until it complied with the ordinance and a declaratory judgment that 1994 PA 250 was unconstitutional on two grounds.[1] Plaintiff argued 1994 PA 250 violated the Title-Object Clause of the Michigan Constitution and was unconstitutionally vague. After the parties filed cross-motions for summary disposition, the trial court upheld 1994 PA 250 against both constitutional challenges and ruled that plaintiff was precluded by the SSRA as amended from enforcing its ordinance against defendant.

The SSRA was originally enacted in 1989. The SSRA was modeled after the Right to Farm Act, MCL 286.471 *et seq.*; MSA 12.122(1) *et seq.*, and was passed in response to problems that arose as urban sprawl brought new development into rural areas, creating conflicts between shooting ranges and their new neighbors. The SSRA as amended provides various forms of protection to shooting ranges, including providing immunity from certain nuisance actions to shooting ranges that comply with generally accepted operation practices. MCL 691.1542; MSA 18.1234(42). The amendments of the SSRA by 1994 PA 250 took effect July 5, 1994. By enacting 1994 PA 250, the Legislature added § 2a to the SSRA, which in subsection 1 permitted a shooting range not in violation of existing law at the time an ordinance is adopted to continue operation even if the range does not conform to a

---

[1] Plaintiff's complaint included a fourth count not, relevant to this appeal, alleging violations of the now-repealed Environmental Protection Act of 1970, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*

new ordinance or an amendment of an existing ordinance. MCL 691.1542a(1); MSA 18.1234(42a)(1).

On appeal, plaintiff argues the trial court erred in ruling 1994 PA 250 does not violate the Title-Object Clause of the Michigan Constitution. We review this question de novo, beginning with the presumption that the legislation is constitutional. *Mooahesh v Dep't of Treasury*, 195 Mich App 551, 562-563; 492 NW2d 246 (1992).

The Title-Object Clause provides in relevant part: "No law shall embrace more than one object, which shall be expressed in its title." Const 1963, art 4, § 24. There are three ways to challenge a statute on the basis of the Title-Object Clause: "a 'title body' challenge, (2) a multiple-object challenge, and (3) a change of purpose challenge." *People v Kevorkian*, 447 Mich 436, 453; 527 NW2d 714 (1994). In this case, plaintiff brings a title-body challenge and a multiple-object challenge. When legislation is challenged on constitutional grounds, it is presumed to be constitutional. *Ace Tex Corp v Detroit*, 185 Mich App 609, 614; 463 NW2d 166 (1990).

We will first address plaintiff's title-body challenge. A title-body challenge claims that the title of an act does not adequately express its contents. *Kevorkian*, *supra* at 453. In this case, plaintiff argues the provisions of § 2a exceed the scope of the title of 1994 PA 250 by providing for zoning and land use regulation. The title of an act must express the general purpose or object of the act. *Mooahesh*, *supra* at 566-567. However, the title of an act is not required to serve as an index to all of the provisions of the act. *Id.* Instead, the test is whether the title gives the Legislature and the public fair notice of the challenged provi-

sion. *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 356; 22 NW2d 433 (1946); *Mooahesh, supra* at 567.

The title of 1994 PA 250, which readopted the title of the SSRA, states that it is:

> AN ACT to provide civil immunity to persons who operate or use certain sport shooting ranges; and to regulate the application of state and local laws, rules, regulations, and ordinances regarding sport shooting ranges.

Section 2a of the SSRA, MCL 691.1542a; MSA 18.1234(42a), provides:

> (1) A sport shooting range that is operated and is not in violation of existing law at the time of the enactment of an ordinance shall be permitted to continue in operation even if the operation of the sport shooting range at a later date · does not conform to the new ordinance or an amendment to an existing ordinance.
>
> (2) A sport shooting range that is in existence as of the effective date of this section and operates in compliance with generally accepted operation practices, even if not in compliance with an ordinance of a local unit of government, shall be permitted to do all of the following within its preexisting geographic boundaries if in compliance with generally accepted operation practices:
>
> (a) Repair, remodel, or reinforce any conforming or nonconforming building or structure as may be necessary in the interest of public safety or to secure the continued use of the building or structure.
>
> (b) Reconstruct, repair, restore, or resume the use of a nonconforming building damaged by fire, collapse, explosion, act of god, or act of war occurring after the effective date of this section. The reconstruction, repair, or restoration shall be completed within 1 year following the date of the damage or settlement of any property damage claim. If reconstruction, repair, or restoration is not completed within 1 year, continuation of the nonconforming use may

be terminated in the discretion of the local unit of government.

(c) Do anything authorized under generally accepted operation practices, including, but not limited to:

(i) Expand or increase its membership or opportunities for public participation.

(ii) Expand or increase events and activities.

We find the title of 1994 PA 250 gives fair notice of the provisions of § 2a. The title provides that the act regulates the application of state and local laws and ordinances to sport shooting ranges. The challenged provisions do no more than that which is expressed in the title. Subsection 1 of § 2a regulates the application of local ordinances regarding sport shooting ranges by setting forth when an existing range may continue to operate even if in violation of a local ordinance. Subsection 2 of § 2a regulates the application of local ordinances by enumerating actions certain ranges may take despite the existence of local ordinances prohibiting such actions. Therefore, this case is clearly distinguishable from *Maki v East Tawas*, 385 Mich 151; 188 NW2d 593 (1971), in which the Michigan Supreme Court found a violation of the Title-Object Clause where a governmental immunity act stated in its title that it provided immunity for injuries caused by negligence but within its body provided for immunity from all tort liability. Moreover, the present case is distinguishable from *Rohan*, *supra*, in which the Michigan Supreme Court found the Title-Object Clause was violated where an act regulating horse-racing meets and the types of betting allowed at the meets also included a provision authorizing the Department of Agriculture to lease state-owned land for horse racing.

Next, plaintiff raises a multiple-object challenge with respect to the title of 1994 PA 250. Our review is again de novo, and we presume the legislation is constitutional. *Mooahesh, supra* at 562-563.

Const 1963, art 4, § 24  prohibits a law from embracing more than one object. *Livonia v Dep't of Social Services*, 423 Mich 466, 496; 378 NW2d 402 (1985). The "object" of a law is its general purpose or aim. *Builder's Square v Dep't of Agriculture*, 176 Mich App 494, 497; 440 NW2d 639 (1989). The body of a law, not merely its title, must be examined to determine whether the act embraces more than a single object. *Kevorkian, supra* at 459. A law " 'may contain all matters germane to its object and any provisions which "directly relate to, carry out, and implement the principal object." ' " *Livonia, supra* at 497, quoting *Greentrees Civic Ass'n v Pignatiello*, 123 Mich App 767, 771; 333 NW2d 350 (1983), quoting *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 465; 208 NW2d 469 (1973). Legislation will not be found to violate the Title-Object Clause solely because it contains more than one means of attaining its primary purpose. *Hawkins v Dep't of Corrections*, 219 Mich App 523, 526; 557 NW2d 138 (1996). Instead, a violation exists only where the law contains subjects so diverse that they have no necessary connection. *Id.*

In this case, the title of 1994 PA 250  specifically states that the act regulates the application of local laws and ordinances regarding sport shooting ranges. Subsection 1 of § 2a directly relates to this purpose because it addresses when an existing shooting range is not required to comply with an ordinance or an amendment of an ordinance to continue operation,

i.e., when it was in compliance with existing law at the time the change took place. Subsection 2 of § 2a also regulates the application of local laws and ordinances, because it sets forth specific actions that an existing sport shooting range is allowed to take regardless of whether local ordinances permit such actions. Accordingly, the challenged provisions do not address subjects so diverse that they have no necessary connection to the stated purpose of 1994 PA 250, and the Title-Object Clause is not violated by their inclusion. *Hawkins, supra* at 526.

Finally, plaintiff argues the SSRA is void for vagueness. This Court reviews this question de novo. *People v Hubbard (After Remand)*, 217 Mich App 459, 484; 552 NW2d 493 (1996). A statute may be declared void for vagueness if (1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated. *Woll v Attorney General*, 409 Mich 500, 533; 297 NW2d 578 (1980). Vagueness challenges that do not involve First Amendment freedoms are analyzed in light of the facts of the particular case. *People v Lino*, 447 Mich 567, 575; 527 NW2d 434 (1994).

Plaintiff argues that the standard set forth in § 2a to determine activities in which a shooting range may engage, "generally accepted operation practices," does not provide adequate guidance either to those whose conduct is regulated or to a trier of fact. We disagree. The term "generally accepted operation practices" is defined in § 1(a) of the SSRA, which provides:

> "Generally accepted operation practices" *means those practices adopted by the commission of natural resources* that are established by a nationally recognized nonprofit membership organization that provides voluntary firearm safety programs that include training individuals in the safe handling and use of firearms, which practices are developed with consideration of all information reasonably available regarding the operation of shooting ranges. The generally accepted operation practices shall be reviewed at least every 5 years by the commission of natural resources and revised as the commission considers necessary. *The commission shall adopt generally accepted operation practices within 90 days of the effective date of section 2a.* [MCL 691.1541(a); MSA 18.1234(41)(a) (emphasis added).]

Plaintiff argues the definition creates uncertainty because what might be considered proper under one organization's generally accepted operation practices might not be considered proper under another. However, it is clear under the statute that the "generally accepted operation practices" to be used to determine the propriety of the activities of a shooting range will be a single specifically adopted standard. The statute charges the Commission of Natural Resources with the responsibility of adopting a set of practices and reviewing them periodically. In fact, the parties indicate the commission has adopted the National Rifle Association's range manual for this purpose. Shooting ranges may refer to these standards to determine whether their operation conforms, and if there is a question for a trier of fact, these adopted practices would provide guidance. Therefore, plaintiff's argument is without merit.

Affirmed.