*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ENBRIDGE ENERGY, LP, ENBRIDGE ENERGY, INC., and ENBRIDGE ENERGY PARTNERS, LP,

      Plaintiffs-Appellees,

v

STATE OF MICHIGAN, GOVERNOR, MACKINAC STRAITS CORRIDOR AUTHORITY, DEPARTMENT OF NATURAL RESOURCES, and DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY,

      Defendants-Appellants.

FOR PUBLICATION
June 11, 2020
9:10 a.m.

No.  351366
Court of Claims
LC No.  19-000090-MZ

Before:  CAMERON, P.J., and BOONSTRA and LETICA, JJ.

CAMERON, P.J.

Defendants, State of Michigan, Governor, Mackinac Straits Corridor Authority ("Corridor Authority"), Department of Natural Resources, and Department of Environment, Great Lakes, and Energy, appeal an order issued by the Court of Claims granting summary disposition under MCR 2.116(I)(2) (opposing party entitled to summary disposition) to plaintiffs, Enbridge Energy, LP, Enbridge Energy, Inc., and Enbridge Energy Partners, LP, following defendants' motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted).  Defendants assert on appeal that the Court of Claims improperly granted summary disposition in favor of plaintiffs because 2018 PA 359 ("the Act" or "Act 359"), amending MCL 254.311 *et seq*., is unconstitutional because it violates the Title-Object Clause, Const 1963, art 4, § 24.  We disagree with defendants' arguments; therefore, we affirm the Court of Claims' order granting summary disposition in favor of plaintiffs.

## I. BACKGROUND

Plaintiffs own and operate Line 5, a pipeline that transports petroleum products.  About four miles of Line 5 crosses the Straits of Mackinac.  In December 2018, Act 359 passed and had immediate effect.  In a December 2018 agreement with the State, plaintiffs agreed to construct a

tunnel crossing the Straits at its own expense, using an easement issued by the Michigan Department of Natural Resources and the Corridor Authority.

In January 2019, the Governor raised questions about the constitutionality of Act 359, and the State Attorney General subsequently issued an opinion declaring the Act unconstitutional because it violated the Title-Object Clause of Michigan's 1963 Constitution. The Governor issued an executive order directing state agencies not to implement the December 2018 agreements. In June 2019, plaintiffs filed a complaint seeking a declaration that Act 359 complied with the Title-Object Clause. The Court of Claims ultimately agreed with plaintiffs and granted summary disposition in their favor, holding that Act 359 is not unconstitutional. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party may move for summary disposition if the opposing party has failed to state a claim on which relief can be granted. MCR 2.116(C)(8). MCR 2.116(I)(2) provides, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." This Court reviews de novo issues of constitutional law, *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003), and affords "all possible presumptions" in favor of constitutionality, *Pohutski v Allen Park*, 465 Mich 675, 690; 641 NW2d 219 (2002) (quotation marks and citation omitted).

## III. THE TITLE-OBJECT CLAUSE

The Title-Object Clause provides as follows:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title. [Const 1963, art 4, § 24.]

A party may raise three types of challenges under the Title-Object Clause: "(1) a 'title-body' challenge, (2) a multiple-object challenge, and (3) a change of purpose challenge." *People v Kevorkian*, 447 Mich 436, 453; 527 NW2d 714 (1994) (opinion by CAVANAGH, J.). The purpose of the Title-Object Clause is "to prevent the Legislature from passing laws not fully understood, to ensure that both the legislators and the public have proper notice of legislative content, and to prevent deceit and subterfuge." *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 184; 658 NW2d 804 (2002) (quotation marks and citation omitted).

### A. TITLE-BODY CHALLENGES

Defendants challenge five specific provisions of Act 359 under the title-body aspect of the Title-Object Clause. We reject each of these challenges because the title of Act 359 provides fair notice of each of those challenged provisions and the provisions are germane to the Act's general purpose.

A title-body challenge is an assertion that the body of an act exceeds the scope of its title. *Wayne Co Bd of Comm'rs*, 253 Mich App at 185. "However, the title of an act is not required to serve as an index to all of the provisions of the act." *Ray Twp v B & BS Gun Club*, 226 Mich App 724, 728; 575 NW2d 63 (1997). "The goal of the clause is notice, not restriction of legislation." *Pohutski*, 465 Mich at 691. A title will only fail to give fair notice if the subject in the body is so diverse from the subject in the title that they have no necessary connection. *People v Cynar*, 252 Mich App 82, 85; 651 NW2d 136 (2002). Even if not directly mentioned in the title of the act, if the title comprehensively declares a general object or purpose, a provision in the body is not beyond the scope of the act as long as it is "germane, auxiliary, or incidental to that general purpose." *Livonia v Dep't of Social Servs*, 423 Mich 466, 501; 378 NW2d 402 (1985) (quotation marks and citation omitted).

### 1. SECTION 14a(1) AND (4)

Defendants argue that §§ 14a(1) and (4) are unconstitutional because they "exceed the scope of what was disclosed in [2018 PA 359's] title." The title of 2018 PA 359 provides in pertinent part:

> An act authorizing the Mackinac bridge authority to acquire a bridge and a utility tunnel connecting the Upper and Lower Peninsulas of Michigan, including causeways, tunnels, roads and all useful related equipment and facilities[;] . . . authorizing the authority to enjoy and carry out all powers incident to its corporate objects; . . . authorizing the authority to secure the consent of the United States government to the construction of the bridge and to secure approval of plans, specifications, and location of the bridge; . . . authorizing the state transportation department to operate and maintain the bridge or to contribute to the bridge and enter into leases and agreements in connection with the bridge; . . . authorizing the creation of the Mackinac Straits corridor authority; authorizing the operation of a utility tunnel by the authority or the Mackinac Straits corridor authority; providing for the construction and use of certain buildings; and making an appropriation.

The pertinent parts of § 14a provide as follows:

> (1) The Mackinac bridge authority may acquire, construct, operate, maintain, improve, repair, and manage a utility tunnel. The Mackinac bridge authority shall determine the rates charged for the services offered by the utility tunnel. The Mackinac bridge authority may enter into contracts or agreements necessary to perform its duties and powers under this act, including, but not limited to, leasing the right to use a utility tunnel on terms and for consideration determined by the Mackinac bridge authority . . . .

> \* \* \*

> (4) The Mackinac bridge authority may perform all acts necessary to secure the consent of any department, agency, instrumentality, or officer of the United States government or this state to the construction and operation of a utility tunnel

and the charging of fees for its use, and to secure the approval of any department, agency, instrumentality, or officer of the United States government or this state required by law to approve the plans, specifications, and location of the utility tunnel or the fees to be charged for the use of the utility tunnel . . . .

Thus, § 14a(1) allows the Mackinac Bridge Authority to acquire, construct, operate, maintain, and manage the utility tunnel, which includes entering into contracts and agreements related to the tunnel, and § 14a(4) allows the Mackinac Bridge Authority to perform "all acts necessary to secure" consent from certain governmental authorities relating to the construction and operation of the utility tunnel.

Defendants argue that these subsections of the Act exceed the scope of the title because the title only indicates that the Mackinac Bridge Authority will undertake acquiring federal consent and entering into leases regarding *a bridge*. However, as already stated, the goal of the Title-Object Clause is to provide notice, not restriction. *Pohutski*, 465 Mich at 691. The title of Act 359 clearly notifies the reader that the Act "authoriz[es] the Mackinac bridge authority to acquire a bridge and a utility tunnel connecting the Upper and Lower Peninsulas of Michigan," and "authoriz[es] the operation of a utility tunnel by the authority *or* the Mackinac Straits corridor authority." Securing approval for the location and construction of a tunnel is a necessary part of acquiring a tunnel, and the acts of entering into contracts and agreements, including leases, are clearly related to the operation of a tunnel. Consequently, because the title specifically references the acquisition and operation of a utility tunnel, neither the legislators nor the pubic were deprived of fair notice of the content of §§ 14a(1) and (4). Although the Legislature elected to provide an index of actions that could be taken by the Mackinac Bridge Authority with respect to the bridge, it is not dispositive that the Legislature did not do so with respect to the tunnel. See *Ray Twp*, 226 Mich App at 728 ("[T]he title of an act is not required to serve as an index to all of the provisions of the act.").

2. SECTION 14d(1), (4), AND (5)

Next, defendants assert that § 14d(1) of Act 359 exceeds the scope of the title because § 14d(1) transfers duties from the Mackinac Bridge Authority to the Corridor Authority despite the fact that the title does not provide fair notice of this transfer. Section 14d(1) of Act 359 provides:

All liabilities, duties, responsibilities, authorities, and powers related to a utility tunnel as provided in section 14a and any money in the straits protection fund shall transfer to the corridor authority board upon the appointment of the members of the corridor authority board under section 14b(2). The transfer of duties, responsibilities, authorities, powers, and money described in this subsection does not require any action by the Mackinac bridge authority or any other entity. The corridor authority board shall exercise its duties independently of the state transportation department and the Mackinac bridge authority.

Thus, in relevant part, § 14d(1) immediately transferred "[a]ll liabilities, duties, responsibilities, authorities, and powers related to a utility tunnel as provided in section 14a . . . to

the corridor authority board upon the appointment of the members of the corridor authority board[.]"

Defendants argue that "[t]his transfer comes without fair notice and is a surprise since" the Act's title only "authori[zes] the Mackinac bridge authority to acquire . . . a utility tunnel connecting the Upper and Lower Peninsulas." We disagree. The title of the Act indicates that the Act creates the Corridor Authority and that the Act authorizes the Corridor Authority to operate the utility tunnel. Activities such as entering into contracts and agreements and acquiring necessary governmental approval are certainly related to, and necessary for, the operation of a utility tunnel. The fact that the Legislature chose to transfer the power to operate the utility tunnel from the Mackinac Bridge Authority to the Corridor Authority does not render the subject of the body so diverse from the subject of the title that it does not provide fair notice of its provisions. To the contrary, the title provides fair notice that the Act creates the Corridor Authority and that it will operate the tunnel. Consequently, we conclude that § 14d(1) does not exceed the scope of the Act's title.

Defendants next argue that § 14d(4) of Act 359 exceeds the scope of the Act's title because, although this section requires the Corridor Authority to enter into an agreement with a private party, the title does not provide fair notice that the Act requires a specific agreement to be made with a private party.

Section 14d(4) of Act 359 requires the Corridor Authority to enter "into an agreement or a series of agreements for the construction, maintenance, operation, and decommissioning of a utility tunnel" if 11 requirements are met. 2018 PA 359, § 14d(4). Specifically, it is required that any agreement "provide[] a mechanism under which all costs of construction, maintenance, operation, and decommissioning of the utility tunnel are borne by a private party and not by the Mackinac Straits corridor authority, its predecessor, or a successor." 2018 PA 359, § 14d(4)(e). Another requirement is that an agreement "provide[] the Mackinac Straits corridor authority with a mechanism to ensure that a utility tunnel is built to sufficient technical specifications and maintained properly . . . ." 2018 PA 359, § 14d(4)(d).

Section 14d(4) of Act 359 does not violate the Title-Object Clause. Subsection (4) provides that the Corridor Authority will ensure that the tunnel is built and maintained properly but that the costs of construction, operation, and maintenance are to be borne by a private party. In other words, § 14d(4)(d) makes the Corridor Authority responsible for overseeing the building and maintaining of the tunnel, and §14d(4)(e) simply addresses who will pay for it. A provision in an act's body is not beyond the title's scope if it is germane to the title's general purpose, *Livonia*, 423 Mich at 501, and a determination of who will pay for the construction and operation of the tunnel is germane to Act 359's general purpose of acquiring and operating a tunnel. The title of Act 359 provides fair notice that the content of the Act authorizes construction and operation of the tunnel, and the Legislature was not constitutionally required to explicitly state in the Act's title exactly who is responsible for which aspects of construction and maintenance of the utility tunnel. See *Ray Twp*, 226 Mich App at 728.

Defendants also argue that Act 359's title did not provide fair notice that § 14d(5) requires the Attorney General to pay for independent legal representation if he or she declines to represent the Mackinac Bridge Authority or the Corridor Authority. We disagree.

-5-

Section 14d(5) of Act 359 provides that, "[i]f the attorney general declines to represent the Mackinac bridge authority or the Mackinac Straits corridor authority in a matter related to the utility tunnel, the attorney general shall provide for the costs of representation by an attorney licensed to practice in this state chosen by the Mackinac bridge authority or the Mackinac Straits corridor authority, as applicable." 2018 PA 359, §14d(5). Section 14d(5) lists several possible claims, including claims regarding the legal validity of, and performance under, the tunnel agreement, as well as claims challenging approval or denial of permits. 2018 PA 359, §14d(5)(a)-(g).

As already stated, a provision in an act's body is not beyond the title's scope if it is germane to the title's general purpose. *Livonia*, 423 Mich at 501. In this case, the general purpose of the Act is to acquire and operate a utility tunnel, and the Act's title references that the body "authoriz[es] the Mackinac bridge authority to acquire a bridge and a utility tunnel" and "authoriz[es] the operation of a utility tunnel by the authority or the Mackinac Straits corridor authority." A provision governing legal representation regarding claims concerning the tunnel is germane to the purpose of acquiring and operating the utility tunnel because these purposes cannot be accomplished if an agreement concerning the construction and/or operation of the tunnel is invalid, enjoined, or not complied with. While defendants argue that this sort of provision is unusual, a specific provision does not fail title-body review merely because it is unusual. Because the Act's title provides fair notice that the body includes matters relating to the acquisition and operation of a utility tunnel and because matters regarding legal representation about the tunnel are not so diverse that they are beyond the scope of the Act's title, we conclude that § 14d(5) does not violate the Title-Object Clause.

### 3. CONSIDERATION OF EXTRANEOUS MATERIAL

Finally, defendants argue that the Court of Claims improperly considered legislative history and public media surrounding the Act when ruling on this case. While we agree with defendants that it would be improper for a court to consider extraneous material when deciding whether an act violates the Title-Object Clause, defendants' argument is not dispositive because our review of the Court of Claims decision reveals that the Court did not consider legislative history or public media when holding that the challenged provisions of Act 359 did not violate the Title-Object Clause. The Court of Claims stated that

the contents of Act 359 were well known, as evidenced by the strong policy-based reactions the Act has drawn. But those policy questions are best left to the Legislature. The Court's concern is only with art 4, § 24, regardless of the merits or wisdom—or lack thereof—of PA 359.

Thus, defendants' argument that the Court of Claims improperly considered extraneous material is unsupported.

### B. MULTIPLE-OBJECT CHALLENGE

Defendants argue that Act 359 violates the multiple-object prohibition of the Title-Object Clause because it addresses two different objects—a bridge and a utility tunnel. We conclude that a bridge and utility tunnel are not unconnected objects.

The Title-Object Clause precludes " 'bringing together into one bill subjects diverse in their nature, and having no necessary connection . . . .' " *Kevorkian*, 447 Mich at 454 (opinion by CAVANAGH, J.), quoting *People v Mahaney*, 13 Mich 481, 494-495 (1865). The entire body of an act must be considered to determine whether the act encompasses more than one object. *Kevorkian*, 447 Mich at 459 (opinion by CAVANAGH, J.) (citation omitted). That provisions could have been enacted in separate acts does not mean that an act violates the Title-Object Clause. *Id*. "There is virtually no statute that could not be subdivided and enacted as several bills." *Id*. The multiple-object prohibition does not preclude the Legislature from amending an act to include new legislation that is germane to furthering the act's general purpose. *Gillette Commercial Operations NA & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 440; 878 NW2d 891 (2015).

As an initial matter, defendants assert that we should consider the former act, 1952 PA 214, to determine whether the amended act violates the multiple-object prohibition. We disagree. In a binding opinion, this Court has stated that when reviewing a multiple-object challenge, we do not apply the Title-Object Clause to the previous public act, but instead apply it to the amendment. See *People v Loper*, 299 Mich App 451, 470-471; 830 NW2d 836 (2013), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358, 395 (2015). Principles of stare decisis also require this Court to reach the same result in a case that presents the same or substantially similar issues presented in a case that another panel of this Court has decided. MCR 7.215(C)(2); *WA Foote Mem Hosp v Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004). Therefore, we will not consider the former act to resolve this issue.

We conclude that the title of 2018 PA 359 does not address objects so diverse that they have no necessary connection. The Legislature amended the title of 1952 PA 214 to include the word "utility tunnel" as well as the word "bridge." The Act's stated purpose involves "connecting the Upper and Lower Peninsulas of Michigan," and both a utility tunnel and a bridge are structures capable of connecting Michigan's peninsulas. Thus, a utility tunnel and a bridge are not unconnected objects. Furthermore, the Act created the Corridor Authority in order to carry out the goal of acquiring and operating the utility tunnel. Considering that an act could authorize all things in furtherance of its general purpose without violating the Title-Object Clause, and given the presumption of the Act's constitutionality, we conclude that Act 359 does not fail multiple-object review under the Title-Object Clause. *Pohutski*, 465 Mich at 690-691.

Because we have concluded that Act 359 is not unconstitutional under the Title-Object Clause, we do not need to address defendants' arguments that its provisions are not severable and that it should be retroactively void.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Anica Letica

-7-