*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AMANDA ASHLEIGH-MARIE REED,

        Defendant-Appellant.

UNPUBLISHED
September 2, 2021

No. 353140
Presque Isle Circuit Court
LC Nos. 19-003234-AV;
19-003235-AV

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order affirming the district court's order for the destruction of her two dogs under MCL 287.286a. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 15, 2019, defendant's two American Bulldogs escaped from her yard while she was raking leaves. She spent the next six hours searching for the dogs. That evening, an area resident, Charles Kendziorski (Kendziorski), went to his barn to tend to his horse. Kendziorski discovered that defendant's dogs were in his barn, near the horse's stall, and that the horse had suffered serious injuries as the result of an apparent animal attack. The dogs and the barn were covered with blood, and one of the dogs appeared to be injured.[2] The horse was examined by

---

[1] *People v Reed*, unpublished order of the Court of Appeals, entered July 23, 2020 (Docket No. 353140) (granting leave to appeal – one judge dissenting – "limited to the issues raised in the application and supporting brief"). With respect to our dissenting colleague, we decline to address issues that were not raised on appeal, or to engage in fact-finding that is not supported in the record.

[2] Photographs in the record reflect that entry to the horse's stall is gained via a metal gate comprised of horizontal metal bars spaced several inches apart. The photographs also reveal that the floor of the interior of the horse stall was blood-covered, and that blood stains on the metal bars of the gate suggest that an animal gained access to the stall by climbing through the gate. The photographs

Laura Jackowiak, DVM, who determined that the horse had suffered serious injuries from an animal attack and that the most humane option was for the horse to be euthanized. Presque Isle County subsequently instituted civil proceedings against defendant under MCL 287.286a. The district court held a show-cause hearing. After the conclusion of the prosecution's proofs, defendant moved for either summary disposition or a directed verdict. The district court denied the motion and subsequently ordered that defendant's dogs be euthanized, stating in relevant part:

> I indicated earlier, there's no doubt to this Court what happened to that horse that day. And, your two animals were found in the stable and they just mauled that horse near to death that day. And there's just no other explanation for it. That poor horse, what happened to that poor horse. And, there's blood all over the dogs, the horse's wounds as described by the Veterinarian were horrific, simply horrific. That dog, the horse was mauled from head to foot. And the Vet testified that there were bite marks all over the horse consistent with a dog attack. The two dogs are in the stall with the horse. There's blood all over the dogs, there's blood everywhere. I—even the officer had a hard time describing what he observed that day. There's no evidence that there were other wild animals that had gotten into the pen and there's simply no doubt in my mind what happened that day. Is that those two dogs got loose and they went into the stall and they mauled the horse. And, a horse is a very large animal, a big animal, and these two dogs were still able to do what they did to a horse. I can't let that happened [sic] to someone, and that's my concern, is if they do that to a horse, what would they do to someone walking along the street. So, the Court is ordering that the dogs be destroyed.

Defendant appealed to the circuit court, which affirmed the district court's order. This appeal followed.[3]

## II. VALIDITY OF MCL 287.286a

Defendant argues that MCL 287.286a, which is a provision of the Dog Law of 1919 (the Dog Law), MCL 287.261 *et seq.*, was repealed by implication when the Legislature passed the

---

of the dogs reveal that the front half of their bodies were completely soaked in blood, yet they only had minor injuries to their mouths and paws, and there was no blood or apparent injury to their hinds. The photographs strongly suggest that the blood on the dogs was not their own, but instead, the blood of another animal that had spilled down on them. Photographs of the horse show that, while locked in its pen, it was severely mauled on all four of its legs and head, including its ears, and its nose and mouth were shredded so severely that the horse was no longer able to eat.

[3] Defendant filed an appeal bond with the circuit court prior to filing this appeal. The circuit court subsequently increased the amount of the appeal bond. On defendant's motion, this Court later granted defendant's motion to reduce the amount of the appellate bond and to stay execution of the district court's euthanasia order. See *People v Reed*, unpublished order of the Court of Appeals, entered June 21, 2021 (Docket No. 353140).

Dangerous Animals Act (DAA), MCL 287.321 *et seq*., and that it is unconstitutionally vague and therefore void. We disagree in both respects.

## A. REPEAL BY IMPLICATION

Defendant argues that the district court erred by ordering that her dogs be euthanized under a law that she contends was repealed by implication as a result of the passage of the DAA. We disagree. We review de novo questions of statutory interpretation. *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003).

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 418-419; 925 NW2d 897 (2018) (quotation marks and citation omitted).]

"[R]epeals by implication have long been disfavored and will only be found if no other intention by the Legislature is possible." *Telford v Michigan*, 327 Mich App 195, 199-200; 933 NW2d 347 (2019). "It is generally presumed that if the Legislature had intended to repeal a statute or statutory provision, it would have done so explicitly. When presented with a claim that two statutes conflict, a court must endeavor to construe the statutes harmoniously if possible." *AK Steel Holding Corp v Dep't of Treasury*, 314 Mich App 453, 464; 887 NW2d 209 (2016) (quotation marks and citations omitted). That being said, "a repeal of a statute may be inferred in two instances: (1) where it is clear that a subsequent legislative act conflicts with a prior act; or (2) when a subsequent act of the Legislature clearly is intended to occupy the entire field covered by a prior enactment." *Id*. (quotation marks and citation omitted). However, "[r]epeals by implication will be allowed only when the inconsistency and repugnancy are plain and unavoidable." *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651; 852 NW2d 865 (2014) (quotation marks and citation omitted). A repeal by implication only occurs if the "two statutes are so incompatible that both cannot stand . . . ." *Id*. at 652 (quotation marks and citation omitted).

The Dog Law contains a variety of provisions relating to the ownership of dogs, including requirements for dog licenses, requirements for kennel licenses, leash requirements, vaccination requirements, and authorization for the killing of dogs that attack wildlife, livestock, or humans. The district court ordered the destruction of defendant's dogs under MCL 287.286a, which provides:

(1) A district court magistrate or the district or common pleas court shall issue a summons similar to the summons provided for in section 20[4] to show cause why a dog should not be killed, upon a sworn complaint that any of the following exist:

(a) After January 10 and before June 15 in each year a dog over 6 months old is running at large unaccompanied by its owner or is engaged in lawful hunting and is not under the reasonable control of its owner without a license attached to the collar of the dog.

(b) A dog, licensed or unlicensed, has destroyed property or habitually causes damage by trespassing on the property of a person who is not the owner.

(c) A dog, licensed or unlicensed, has attacked or bitten a person.

(d) A dog has shown vicious habits or has molested a person when lawfully on the public highway.

(e) A dog duly licensed and wearing a license tag has run at large contrary to this act.

(2) After a hearing the district court magistrate or the district or common pleas court may either order the dog killed, or confined to the premises of the owner. If the owner disobeys this order the owner may be punished under section 26. Costs as in a civil case shall be taxed against the owner of the dog, and collected by the county. The county board of commissioners shall audit and pay claims for services of officers rendered pursuant to this section, unless the claims are paid by the owner of the dog. [MCL 287.286a.]

MCL 287.286a was added to the Dog Law in 1927 by 1927 PA 114.

The DAA was enacted by 1988 PA 426 and became effective in 1989. This Court has found that by enacting the DAA, "the Legislature sought to curtail the ownership of dangerous animals" by including provisions designed "to prevent dangerous animals from running at large or injuring persons" and "by placing owners on notice that they will be held criminally liable for any

---

[4] Section 20 (MCL 287.280) pertains to the destruction of dogs that attack livestock. Although this provision arguably applied to the case at hand, this provision was not cited by the district court in making its decision. In any event, MCL 287.280 provides for the euthanasia of a dog, after a show cause hearing before an appropriate township official, if a person "sustains any loss or damage to livestock . . . that is caused by dogs" or if "the livestock of a person is necessarily destroyed for having been bitten by a dog." As we will explain in this opinion, the evidence that defendant's dogs destroyed the horse was sufficient under both MCL 287.280 and MCL 287.286a(1)(b).

harms caused by their dangerous animals." *People v Janes*, 302 Mich App 34, 53; 836 NW2d 883 (2013) (emphasis omitted). The DAA defines a "dangerous animal" as follows:

(a) "Dangerous animal" means a dog or other animal that bites or attacks a person, or a dog that bites or attacks and causes serious injury or death to another dog while the other dog is on the property or under the control of its owner. However, a dangerous animal does not include any of the following:

(*i*) An animal that bites or attacks a person who is knowingly trespassing on the property of the animal's owner.

(*ii*) An animal that bites or attacks a person who provokes or torments the animal.

(*iii*) An animal that is responding in a manner that an ordinary and reasonable person would conclude was designed to protect a person if that person is engaged in a lawful activity or is the subject of an assault.

(*iv*) Livestock. [MCL 287.321.]

Section 2 of the DAA, MCL 287.322, provides in relevant part:

(1) Upon a sworn complaint that an animal is a dangerous animal and the animal has caused serious injury or death to a person or has caused serious injury or death to a dog, a district court magistrate, district court, or a municipal court shall issue a summons to the owner ordering him or her to appear to show cause why the animal should not be destroyed.

\* \* \*

(3) After a hearing, the magistrate or court shall order the destruction of the animal, at the expense of the owner, if the animal is found to be a dangerous animal that caused serious injury or death to a person or a dog. After a hearing, the court may order the destruction of the animal, at the expense of the owner, if the court finds that the animal is a dangerous animal that did not cause serious injury or death to a person but is likely in the future to cause serious injury or death to a person or in the past has been adjudicated a dangerous animal. [MCL 287.322.]

Section 3 of the DAA provides for criminal liability for the owner of a dangerous animal that causes certain types of harm. MCL 287.323.

There is some overlap between MCL 287.286a. and the DAA. For example, both statutes allow a district court to issue a show cause order and subsequently order that a dog be euthanized if the dog attacks a person. But the Dog Law provides for euthanasia in much broader circumstances than does the DAA. MCL 287.286a(1) provides for the euthanasia of dogs that have, among other things, "destroyed property," "attacked or bitten a person," or "shown vicious habits." By contrast, the DAA only allows a court to order a dog's destruction if it finds that the dog meets the definition of "dangerous animal" and if it finds that the dog has caused or is likely

to cause "serious injury or death to a person." MCL 287.322(3). Furthermore, unlike the Dog Law, the DAA does not provide for the protection of property or livestock. But the DAA is also broader than § MCL 287.286a in providing for the euthanasia of any "dangerous animal" regardless of whether the animal is a dog. MCL 287.321(a).

The DAA thus specifically addressed the protection of human beings and dogs from any dangerous animals, including dogs, while the Dog Law specifically regulates dog ownership and MCL 287.286a specifically provides for the euthanasia of dogs that have injured persons, property, or livestock. Notwithstanding the overlap between the DAA and MCL 287.286a, these statutes are not "so incompatible that both cannot stand . . . ." *Int'l Business Corp*, 496 Mich at 652. Given the differences in the scope and purpose of these statutes, we cannot conclude that the two statutes plainly and unavoidably conflict, or that the Legislature intended the DAA to occupy the entire field previously covered by MCL 287.286a. *AK Steel Holding Corp*, 314 Mich App at 464. The DAA did not repeal MCL 287.286a by implication.

## B. VAGUENESS

Defendant also argues that MCL 287.286a is void for vagueness. We disagree. We review constitutional issues de novo as questions of law. *Seifeddine v Jaber*, 327 Mich App 514, 516; 934 NW2d 64 (2019).

To establish that a law is unconstitutionally vague, a defendant must show that: "(1) it is overbroad, impinging on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 696; 525 NW2d 921 (1994). "To determine whether a statute is void for vagueness, a court should examine the entire text of the statute and give the words of the statute their ordinary meanings." *Dep't of State Compliance & Rules Div v Mich Ed Ass'n-NEA*, 251 Mich App 110, 116; 650 NW2d 120 (2002). To provide adequate notice, "a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *Dep't of State Compliance & Rules Div*, 251 Mich App at 117 (quotation marks and citation omitted). "Vagueness challenges that do not involve First Amendment freedoms are analyzed in light of the facts of the particular case." *Ray Twp v B & BS Gun Club*, 226 Mich App 724, 732; 575 NW2d 63 (1997).

The district court ordered the destruction of the dogs under MCL 287.286a(1)(b) on the ground that the dogs had destroyed property. Defendant argues that MCL 287.286a(1)(b) fails to give adequate notice because it does not provide a definition for "destroy" or "property." That is, defendant does not contend that she did not have adequate notice under the particular circumstances of this case; rather, defendant only argues that the terms "destroy" and "property" are vague. However, because the conduct at issue in this case clearly falls within the statute, defendant's challenge is without merit. *Ray Twp*, 226 Mich App at 732. The dogs in this case entered a barn located on Kendziorski's property and inflicted such serious injuries upon the horse

that, on the advice of a veterinary professional, the horse had to be euthanized.[5] MCL 287.286a(1)(b) is not unconstitutionally vague as applied in these circumstances.[6]

## III. SUMMARY DISPOSITION AND DIRECTED VERDICT

Defendant also argues that the district court erred by denying her motion for summary disposition or a directed verdict. We disagree. We review de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp.*, 469 Mich 177, 183; 665 NW2d 468 (2003); *Richardson v Allstate Ins Co*, 328 Mich App 468, 471; 938 NW2d 749 (2019). We review de novo a trial court's decision to grant or deny a motion for a directed verdict. *Anaya v Betten Chevrolet, Inc*, 330 Mich App 210, 215; 946 NW2d 560 (2019). "A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Id*. This Court, when reviewing a directed verdict, "must view the testimony and all legitimate inferences from the testimony in the light most favorable to the nonmoving party." *Id*. at 215-216.

The evidence presented to the district court was sufficient for the district court to find that the horse had been attacked by defendant's dogs. Kendziorski testified that he found the dogs in his barn, that the dogs were within 10 feet of the horse, that the dogs were barking, and that one dog was "kind of posturing." He further testified that "there was blood everywhere," and Dr. Jackowiak (who examined all three animals that same evening) testified that both of the dogs "were covered in a substantial amount of dried blood." Dr. Jackowiak further testified about the extensive injuries suffered by the horse, and that the horse's injuries appeared to be "bite wounds and scratches from animal nails." There was no evidence presented that any other animals had been in the barn with the horse. Given this evidence, a reasonable fact-finder could conclude that defendant's dogs had attacked the horse.

Defendant argues that there was no evidence that *both* dogs attacked the horse. However, because the horse had numerous wounds on multiple areas of its body, both dogs had lacerations on their bodies, and both dogs were found inside the barn covered in blood, a reasonable fact-finder could determine that both dogs had attacked the horse.

Defendant additionally argues that her dogs did not *destroy* property, as is required under MCL 287.286a(1)(b), because there was no evidence that the injuries inflicted upon the horse were lethal and that the horse could not have recovered were it not euthanized. Defendant argues that the actual cause of the horse's destruction was Kendziorski's decision to euthanize it. We disagree.

It is appropriate for this Court to consult a dictionary to ascertain the plain meaning of undefined statutory terms. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34

---

[5] The record shows that the horse's injuries had rendered it unable to eat, and it was unknown whether, or when, the horse would regain that ability.

[6] Defendant also argues briefly that MCL 287.286a(1)(d) fails to give adequate notice because it does not provide a definition of "vicious habits." However, because the record shows that the district court did not rely on this provision, we decline to address this argument.

(2002). "Destroy" is defined as "to ruin the structure, organic existence, or condition of." *Merriam-Webster's Collegiate Dictionary* (11th ed.). In this case, the district court did not err by finding that defendant's dogs had destroyed the horse. Dr. Jackowiak testified that the horse had wounds all over its body, some wounds were "up to 6 inches in length," wounds on its face went "all the way through the skin and the musculature," some of its muscles had been pulled away from its abdomen, and it was covered in blood. The horse was so severely injured that it could not even eat, and Dr. Jackowiak testified that she could not predict when it might be possible for the horse to eat again. She also testified that euthanasia was the most humane option. The district court could have properly concluded that the euthanasia of the horse merely spared it a painful death or a miserable, painful life, and that the dogs' attacks had "destroyed" the horse within the meaning of the statute. The district court did not err by denying defendant's motion.

Affirmed.[7]

/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[7] Defendant also argues that the prosecution failed to establish that the dogs attacked the horse without provocation; however, lack of provocation is not a required finding under MCL 287.286a(1)(b). Similarly, although defendant argues that the prosecution did not establish the requirements under the DAA, the district court did not rely on the DAA in making its determination.